KEEWALIK MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26682.    Promulgated September 7, 1932.

*W. H. Gorham, Esq.,* for the petitioner.
*P. A. Bayer, Esq.,* for the respondent.

954

OPINION.

MATTHEWS: While this proceeding is one for a redetermination of a deficiency for 1922, the petitioner claims a net loss for 1921 resulting from the respondent's refusal to allow sufficient depreciation and depletion in that year and the same question as to the proper allowance for depreciation and depletion arises for 1922, so we have to decide the correct amount allowable for both years.

The respondent has used the amount of $176,500, which represents the combined cost of the claims and the ditch and pipe line in 1911, plus the cost of additions to March 1, 1913, as the March 1, 1913 value, $83,057.21 being allocable to the ditch and pipe line, and has allowed depletion on both the mining claims and the ditch and pipe line on the unit-of-production method at the rate of $4.16 per ounce of gold produced. The petitioner attacks both the basis and the method used by the respondent, claiming that the March 1, 1913, value of the claims and of the pipe line is greater than that used by the respondent, which would result in an increase in the allowance for exhaustion of both the claims and the ditch and pipe line, and that, also, it is entitled to an allowance for *depreciation* on the ditch and pipe line based on its useful life, rather than an allowance for depletion computed on the unit-of-production basis of the mine.

In considering both these questions it should be borne in mind that the mining claims and the ditch and pipe line are dependent for their usefulness one upon the other. The mining claims, without water to work them, are practically worthless and the ditch and pipe line have no value without ore reserves to which they can furnish water.

In order to sustain its claim as to the value on March 1, 1913, of these properties the petitioner introduced, in addition to the documentary evidence, two witnesses, E. J. Mathews, its president, and C. L. Morris, a mine operator who had been in charge of the construction of the pipe line. These witnesses testified that the ditch and pipe line had a value on the basic date of $300,000. This was based on reconstruction cost computed on the theory that the original cost in 1907 was $251,154, and that since the cost of labor had increased it was estimated that the reconstruction cost must have been at least $300,000. However, the evidence shows that the ditch was in such bad repair in the latter part of 1912 and the early part of 1913 that it could not be used and that it was only after considerable amounts had been spent on reconditioning it that it was available for

use in the late summer of 1913. Upon a careful consideration of the evidence, we are of the opinion that the ditch and pipe line did not have a value on March 1, 1913, in excess of that determined by the respondent.

As to the claims, Morris did not give any detailed explanation of the manner in which he arrived at his opinion as to the value. Although there was other mining property adjacent to that of the petitioner, there is no evidence as to whether there were any sales of it, or as to what it sold for. Between $30,000 to $40,000 worth of gold ore had been extracted on the petitioner's property between 1906 and 1913, but there is no evidence as to exactly how much the cost of extraction had been or that Morris took this cost into consideration in arriving at his valuation. There is no other evidence as to the value of these claims on the basic date. Mathews' opinion as to value is at most an estimate, not even based on prior production. He admitted that when he made this valuation he thought the mine could be operated from 90 to 100 days a year and that the cost of extraction would be 25 cents per cubic yard. As a matter of fact, due to the scarcity of water, the number of days the property was operated up to 1917 did not exceed 45 days a year, and the actual cost of extraction was 80 or 90 cents per cubic yard.

We are, therefore, of the opinion that upon a consideration of all the evidence, the respondent's determination of the value on March 1, 1913, of the mining claims and of the ditch and pipe line is correct. See *Stevens County Power & Light Co.*, 12 B. T. A. 134; *Jerecki Mfg. Co.*, 12 B. T. A. 1165; *Preston County Coke Co.*, 24 B. T. A. 646; and *Old Mission Portland Cement Co.*, 25 B. T. A. 305.

We shall now consider the question of the correct method to be used in computing the allowance. The petitioner does not contest the method used for computing the depletion on the mining claims and, therefore, we sustain the respondent's allowance in this respect. As to the ditch and pipe line, it is immaterial whether we refer to the claimed allowance as depreciation or depletion. As we understand the situation, the real issue is whether the allowance for exhaustion of the ditch and pipe line should be computed on the same basis as that of the gold-mining claims, by the unit-of-production method, or whether on the basis of the useful life of the ditch itself.

In the case of *Kehota Mining Co.* v. *Llewelyn*, 28 Fed. (2d) 995; affd., 30 Fed. (2d) 817, the court held it proper to compute depreciation or depletion on coal-mining equipment on the unit-of-production basis where the life of the equipment was coextensive with the life of the mine. The petitioner contends that the useful life of the ditch was not dependent on the production of ore from the petitioner's mining claims, but that it had a usefulness arising from the service it could render to other mining claims. Although there was

testimony that the ditch and pipe line could be used for other adjoining claims, there is no evidence as to the nature of these claims or as to whether any mining was being done upon them. But the chief weakness in the petitioner's contention is that there was not a sufficient water supply for the petitioner to mine its own claims more than 30 to 45 days a year. Moreover, while the physical life of the ditch was indefinite, and that of the pipe line was perhaps 40 to 50 years, the testimony as to the length of its useful life was merely an estimate made by one of the witnesses without giving any basis for his estimate. Upon this evidence we are unable to find that the ditch and pipe line had a useful life any longer than that of the petitioner's mining claims and, therefore, we sustain the respondent's action in computing the allowance on the same basis as that of the mining claims.

As to the petitioner's contention that it sustained a net loss in 1921, the respondent determined that the petitioner had net income in that year, after allowing a deduction for depreciation computed on the same basis and in the same manner as the allowance for 1922. A net loss would result only if the petitioner was entitled to an additional allowance for depreciation or depletion for that year. In view of our decision that the respondent's computation of depletion was correct, it is clear that there was no net loss for 1921.

*Judgment will be entered for the respondent.*